## No. 34
### BISHOP et v. WHITEHEAD
No. 19435. Supreme Court

On motion to certify. Dock. Nov. 21, 1925; 3 Abs. 738.

227. CHARITABLE TRUSTS — 1. Does fact that after securities, bonds, etc., have been placed in hands of trustees by settlor, and interest on same was paid to latter; and there was a making out of a tax return, indicate that there was no delivery of the trust fund in the first place?

2. Would such acts of trustees be immaterial so far as next of kin of settlor were concerned?

Thomas Harris, desiring to make a disposition of his property went to Taylor Bishop, his banker, to make same. He desired to make legacies, one to his daughter Gwennie Whitehead of $2500 and $500 to each of five grandchildren; and then to give the rest to the village of Alexandria for a library.

Bishop advised him to see his attorneys, employed by the bank; and as a result of a conference a will was drawn and also a trust agreement in which Harris turned over to Bishop and one James Price or survivors, $17,000 in bonds, mortgages and money to be used for the best interests of Alexandria in the erection of the "Harris Memorial Library." Harris acknowledged and signed his will and also the agreement with Bishop and Price, on Feb. 25, 1922, and the securities were endorsed and kept by the trustees in an envelope with other papers in possession of the bank.

Thomas Harris died within a year and after the probate of the will, his daughter Gwennie Whitehead, brought suit in the Licking Common Pleas, against Bishop and Price to set aside the trust agreement. It was alleged that the contract was a scheme to defeat the provisions of 10504 GC. which holds void, charitable bequests if testator dies within a year leaving issue of his body; and because there was no delivery of the securities. There was a general denial by Bishop and Price. The Common Pleas held that there was no delivery as a matter of law and set aside the trust agreement. On appeal the Court of Appeals held likewise and the case was filed in the Supreme Court.

It is contended that Harris intended to make a complete and consummated gift. The contract signed by him recited that he "does hereby transfer and turn over to second party." The securities were taken from Harris' box and given to the trustees and put in an envelope with their names on it and kept in a different place by them.

Both the lower courts held that although Whitehead alleged failure of delivery which was denied, the burden was on the trustees to prove by clear and convincing evidence that there was a delivery and completed gift. The question of law raised is: Could the acts of the trustees in paying the interest on the securities to Harris and returning some of the securities in his name for taxes, after delivery of the trust property had been completed on Feb. 25, 1922, divest Alexandria of the title to the trust fund and revert such title in Harris?

It is claimed that the law relative to public trusts governs the situation and these trusts are favored by the law. "Gifts for charitable purposes have always been favored in equity,

and trusts created for such purposes are carried into effect upon broad, liberal principles of equity jurisprudence under circumstances where a purely private trust might fail.

It is urged that after the securities and bonds had been placed with the bank, Harris thereafter did not have access to or control over such property; and nothing Harris could do could deprive Alexandria, the cestui que trust, of the vested title of the trust fund. The payment of interest to Harris by the trustees it is claimed would make them liable for malfeasance, and liable to a suit by the village to recover the amount illegally diverted by them from the trust fund; but nothing the trustees could do subsequent to such delivery could divert from Alexandria the title claimed to have been previously vested in it.

It is stated in conclusion that payment of interest on a part of the fund to Harris and making out of the tax return, after the trust fund had been delivered, were acts immaterial so far as the next of kin of Harris were concerned.

Attorneys—Flory & Flory, C. G. L. Ycarick and Edward Kibler for Bishop, et; Fitzgibbon, Montgomery & Black for Whitehead; all of Newark.